IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JENNIFER S.,                              )
                                          )
                    Plaintiff,            )
                                          )
          v.                              )          1:22CV985
                                          )
MARTIN J. O'MALLEY,[1]                    )
Commissioner of Social Security,          )
                                          )
                    Defendant.            )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Jennifer S. ("Plaintiff") brought this action pursuant to Section 205(g) of the

Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a

final decision of the Commissioner of Social Security denying her claim for Disability

Insurance Benefits ("DIB") under Title II of the Act. The Parties have filed cross-motions

for judgment, and the administrative record has been certified to the Court for review.

I.        PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on October 8, 2015, alleging a

disability onset date of April 26, 2015. (Tr. at 15, 169-77.)[2] She sought only DIB under Title

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting
Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J.
O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit. No further action need be taken
to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. §
405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #4].

II, and her date last insured is September 30, 2017. Therefore, the relevant period at issue is April 26, 2015 to September 30, 2017.

Her application was denied initially (Tr. at 62-76, 92-96) and upon reconsideration (Tr. at 77-91, 97-100). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 101, 104-05.) On July 11, 2018, Plaintiff, along with her attorney, attended the subsequent hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 15.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 26), and, on April 27, 2020, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

Thereafter, Plaintiff filed an appeal with this Court. (See Tr. at 914-18.) On March 12, 2021, the Court remanded the case for further administrative proceedings upon Consent Motion from the Agency (Tr. at 915-16), and the Appeals Council entered its own Remand Order on May 20, 2021 (Tr. at 919). Following Plaintiff's remand hearing on October 5, 2021, the ALJ again issued an unfavorable decision. (Tr. at 855.) On June 1, 2022, the Appeals Council denied Plaintiff's request for review of this decision (Tr. at 832), and Plaintiff, after receiving an extension of time to file her claim in federal court, timely filed her claim in this Court on November 17, 2022 [Doc. #2].

II.    LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144

2

(4th Cir. 1981).  "The courts are not to try the case de novo."  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard."  Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted).  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted).  "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence."  Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]."  Mastro, 270 F.3d at 176 (internal brackets and quotation omitted).  "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ."  Hancock, 667 F.3d at 472 (internal brackets and quotation omitted).  "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

3

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 *et seq.*, provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 *et seq.*, provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

Case 1:22-cv-00985-JEP   Document 11   Filed 03/25/24   Page 4 of 17

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

5

III.    DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" between April 26, 2015, her alleged onset date, and September 30, 2017, her date last insured. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 860.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments during the period from April 26, 2015 to September 30, 2017:

> Fibromyalgia, left hip degenerative joint disease, Factor V Leiden deficiency, anti-coagulation disorder, hypertension, asthma, morbid obesity, bipolar disorder, adjustment disorder with depression and anxiety[.]

(Tr. at 860-61.) The ALJ found at step three that none of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 861-65.) Therefore, the ALJ assessed Plaintiff's RFC for the period from April 26, 2015 to September 30, 2017, and determined that she could perform sedentary work with further limitations. Specifically, the ALJ found as follows:

> [Plaintiff] is limited to lifting/carrying 20 pounds occasionally and 10 pounds frequently. She is limited to standing and walking up to 4 hours in an eight-hour workday and sitting up to 6 hours in an eight-hour workday. She must be afforded the option to alternate between sitting for 30 minutes and then standing for 30 minutes throughout the workday. She must not push, pull or use foot controls with the left lower extremity but she can frequently use foot controls with the right lower extremity. She is limited to frequent climbing of ramps and stairs but no climbing of ladders, ropes or scaffolds. She is limited to frequent balancing, frequent stooping, occasional kneeling, occasional crouching but never any crawling. She is limited to frequent reaching in all directions with the bilateral upper extremities as well as frequent pushing and pulling with the bilateral upper extremities. [Plaintiff] must avoid concentrated exposure to extreme cold, extreme heat, humidity, wetness, dust, odors, fumes and other pulmonary irritants. She is limited to occasional exposure to vibrations, but she must avoid working at unprotected heights and around dangerous machinery. She can frequently operate a motor vehicle. In addition,

6

> [Plaintiff] is limited to performing unskilled work consisting of routine tasks, maintaining concentration, persistence, and pace for two-hour periods during the workday with occasional interaction with the public in a stable work environment, which means few and infrequent changes to the work routine.

(Tr. at 865.) At step four of the analysis, the ALJ determined, based on the testimony of the vocational expert, that all of Plaintiff's past relevant work exceeded the above RFC. (Tr. at 869.) However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy during the period from April 26, 2015 to September 30, 2017, and therefore was not disabled under the Act. (Tr. at 870-71.)

Plaintiff now contends that in formulating the RFC assessment, the ALJ erred in two respects. First, Plaintiff argues that the ALJ "erred in failing to adopt, or explain the basis for failing to adopt, state agency psychology consultant Dr. Madelyn Miranda-DeCollibus' opinion [that Plaintiff] was limited to work in a 'low-production environment,' despite finding the opinions of all the state agency consultants entitled to 'some weight.'" (Pl.'s Br. [Doc. #7] at 1.) Second, Plaintiff asserts that "the ALJ erred in failing to explain how the [RFC] accounted for [Plaintiff's] moderate limitations in interacting with others." (Pl.'s Br. at 1.) After a thorough review of the record, the Court finds that neither of these contentions require remand.[5]

---

[5] In the briefing, Plaintiff's summary of the medical evidence focuses on the evidence regarding Plaintiff's physical limitations. (Pl.'s Br. at 6-9.) However, the issues raised relate only to the assessments of the mental limitations in the RFC. Therefore, the Court addresses only the specific issues raised by Plaintiff. The Court does note that with respect to Plaintiff's physical limitations, the ALJ obtained the testimony of a Medical Expert, Dr. Allen Duby, who testified at the hearing, and his opinion is considered at length in the ALJ's decision.

7

A. Opinion evidence

For claims like Plaintiff's that are filed before March 27, 2017, ALJs evaluate the medical opinion evidence in accordance with 20 C.F.R. § 404.1527(c). Brown v. Comm'r Soc. Sec., 873 F.3d 251, 255 (4th Cir. 2017). "Medical opinions" are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. (quoting 20 C.F.R. § 404.1527(a)(1)). While the regulations mandate that the ALJ evaluate each medical opinion presented to him, generally "more weight is given 'to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.'" Id. (quoting 20 C.F.R. § 404.1527(c)(1)). Each opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. § 404.1527(c)(2)-(c)(6), including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. The ALJ must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. § 404.1527(c)(2). This requires the ALJ to provide "sufficient explanation for meaningful review by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014)

8

(internal quotations omitted).[6]  Nevertheless, even "[i]mplicit assignments of weight can support meaningful review" so long as the ALJ's decision "make[s] clear that she 'recognized and evaluated the treating relationships' of medical sources." Thomas v. Comm'r, Soc. Sec., No. Civ. WDQ–10–3070, 2012 WL 670522, at *7 (D. Md. Feb. 27, 2012).

Here, the ALJ assigned "some weight" to the opinions of the State agency consultants at the initial and reconsideration levels, which includes Dr. Miranda-DeCollibus, the state agency psychological consultant upon reconsideration.  (Tr. at 869; see also Tr. at 86-88.)  In making this assignment, the ALJ noted that none of the consultants had "the benefit of reviewing the evidence received" at the most recent hearing.  (Tr. at 869.)  The ALJ therefore explained that she "considered all of the evidence submitted," including the consultants' opinions and all evidence pre- and post-dating it, in formulating Plaintiff's RFC.  (Tr. at 869.)

Plaintiff now argues that the ALJ's explanation was insufficient under the relevant case law.  In particular, Plaintiff contends that, because the ALJ accorded "some weight" to the opinions of the state agency consultants, the ALJ was specifically required to either (1) adopt all aspects of those opinions when formulating Plaintiff's RFC assessment or (2) explain the absence of any omitted limitations.  However, the regulations "do not require an ALJ to adopt each and every limitation in a persuasive medical opinion." Kimberly D. v. Kijakazi, No. 4:20CV159 (RCY), 2022 WL 854840, at *3 (E.D. Va. Mar. 22, 2022).  Plaintiff points to Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019) and Patterson v. Commissioner of

---

[6] For claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings have been rescinded.  The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c.  However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the regulatory provisions set out above.

Case 1:22-cv-00985-JEP   Document 11   Filed 03/25/24   Page 9 of 17

Social Security Administration, 846 F.3d 656, 662-63 (4th Cir. 2017) for the proposition that the ALJ cannot exclude, without explanation, "a more restrictive limitation from a medical opinion she gave some weight." (Pl.'s Br. at 13). However, these cases do not address or implicate an ALJ's departure from a single medical opinion. Rather, they require an ALJ to "address conflicting evidence, or explain away contrary findings of other doctors." Patterson, 846 F.3d at 662 (emphasis added). While Plaintiff suggests that the omission of a limitation to a "low-production environment" presents an unresolved conflict between opinions or within the medical evidence, the opinion evidence is generally very consistent, and to the extent there may be minor inconsistencies, the ALJ's analysis is sufficient to resolve any conflict based on the ALJ's adoption of the restrictions opined by the psychiatric consultative examiner, Dr. Quinn.

Notably, the opinions of Dr. Miranda-DeCollibus and Dr. Ben Williams, the State agency psychological consultant at the initial level, contain identical limitations regarding Plaintiff's ability to maintain concentration, persistence, and pace, including moderate limitations in Plaintiff's ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and work week without interruption from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 72, 87.) Dr. Miranda De-Collibus and Dr. Williams likewise agreed that Plaintiff is not significantly limited in her ability to carry out very short and simple instructions, in her ability to perform activities within a schedule and maintain regular attendance, in her ability to sustain an ordinary routine, and in her ability to make simple work-related decisions. (Tr. at 72, 86.) Dr. Miranda-DeCollibus' narrative

discussion of Plaintiff's concentration and persistence limitations noted that Plaintiff could sustain concentration and persistence in a "low-production environment" (Tr. at 87), and Dr. Williams' narrative explanation of Plaintiff's concentration and persistence abilities simply reiterated that Plaintiff was capable of "completing [a normal] workday/[week without] interruptions," and maintaining sufficient attention and concentration. (Tr. at 72.) Although Plaintiff's mental RFC assessment lacks the exact phrasing provided by either consultant, it includes limitations to "performing unskilled work consisting of routine tasks, maintaining concentration, persistence, and pace for two-hour periods during the workday," only "occasional interaction with the public," and "a stable work environment," further defined as having "few and infrequent changes to the work routine." (Tr. at 865, 869.)

In addition, the ALJ's evaluation of Plaintiff's mental impairments reflects substantial reliance on the opinion evidence from Dr. Quinn, the psychiatric consultative examiner, who had the opportunity to examine Plaintiff during the relevant period in January 2016 and whose opinion would generally be entitled to greater weight under the applicable regulations. Specifically, the ALJ noted that Dr. Quinn "concluded that there were no factors present during the clinical interview or the extended mental status exam that would negatively impact [Plaintiff's] ability to provide information or perform adequately," and specifically with respect to concentration, persistence, and pace, the ALJ noted that:

> during her psychological evaluation in January 2016, consultative psychologist Dr. Quinn concluded that based on the claimant's educational history, vocational history, and functional history, it appears the current cognitive and emotional functioning are at about the baseline level reported prior [to] her report of onset of disability. He noted that the claimant did not report and that she demonstrated no difficulties reading or writing. She [] also was able to perform simple calculations during the structured mental status exam with Dr. Quinn, and she had the ability to understand, to retain, and to follow

11

instructions throughout her evaluation as well as the ability to sustain attention to perform at least simple and repetitive task[s] during the Clinical interview and the structured mental status exam. Dr. Quinn wrote that he found no psychiatric condition that would prevent tolerating the stress and pressures associated with day-to-day work or similar activity (Exhibit 3F/9-10).

(Tr. at 864, 869.) Thus, Dr. Quinn found Plaintiff capable of sustaining attention to perform simple and repetitive tasks, and specifically found no issues that would affect her ability to tolerate "the stress and pressures associated with day to day work." (Tr. at 864, 374.) Thus, Dr. Quinn's opinion supports the ALJ's conclusion that no additional limitations were included in the RFC with regard to a low stress or non-production setting.

In addition to relying on Dr. Quinn's opinion, the ALJ also noted that the RFC included additional limitations based on "subsequent medical records." (Tr. at 869.) Consistent with this explanation, the ALJ relied on treatment records and mental status examinations during the relevant period, and noted that treatment alleviated some of Plaintiff's symptoms and that:

> mental status examinations throughout the record generally showed benign findings including no acute distress, proper orientation, cooperation, normal affect, and normal mood (1F 10: 2F/13; 5F 20: 7F: 1OF 6, 20: 16F/3). In addition, mental status examinations showed normal attention span, normal memory, normal fund of knowledge, normal judgement, normal insight, and normal concentration (8F/3, 14, 20: 1OF 6: 11F 7: 12F/7; 14F/7), suggesting that treatment was at least somewhat effective. She has not had any hospitalizations for exacerbations of mental health problems.

(Tr. at 866.) The ALJ also relied on Plaintiff's ability to continue to care for her child, particularly that "she has been able to care for her child despite her symptoms." (Tr. at 867.) In this regard, Dr. Quinn's evaluation reflects that during the relevant time period, Plaintiff lived at home with her toddler daughter, who was aged 2 to 4 during the relevant period. (Tr. at 367-68.) According to Dr. Quinn's report, Plaintiff reported that she was "able to take care

12

of her daughter by providing her with simple meals and adequate supervision but is unable to do much for herself." (Tr. at 368.)

Ultimately, the ALJ relied on (1) Plaintiff's mental status examinations, which "showed normal attention span, normal memory, normal fund of knowledge, normal judgement, normal insight, and normal concentration" (Tr. at 864) (citing Tr. at 482, 493, 499, 583, 597, 636, 665, 733); (2) the effectiveness of treatment given Plaintiff's benign mental status findings (Tr. at 866); (3) Plaintiff's ability to continue as the full-time, primary caregiver for her young daughter (Tr. at 866-67); and (4) Dr. Quinn's examination and opinion regarding Plaintiff's ability to "sustain attention to perform at least simple and repetitive tasks" with no limitation regarding stress and pressures of work (Tr. at 864, 869) (citing Tr. at 374). Based on these findings, the ALJ concluded that, to account for her moderate limitations in concentration, persistence, and pace, Plaintiff required limitations to "performing unskilled work consisting of routine tasks, maintaining concentration, persistence, and pace for two-hour periods during the workday." (Tr. at 869.) The ALJ also limited Plaintiff to only "occasional interaction with the public," and "a stable work environment," further defined as having "few and infrequent changes to the work routine." (Tr. at 865, 869.) These limitations were specifically included to address both her psychological impairments as well as headaches and symptoms from fibromyalgia. (Tr. at 869.) The analysis in the administrative decision clearly connects the evidence to the mental RFC in this case. Because the ALJ's decision is susceptible to judicial review, and is supported by substantial evidence in the record, the Court finds no basis for remand.

Case 1:22-cv-00985-JEP   Document 11   Filed 03/25/24   Page 13 of 17

B. Moderate interaction limitations

In a similar challenge, Plaintiff next contends that "[t]he ALJ erred by failing to provide sufficient RFC restrictions to account for [Plaintiff's] moderate social impairments" or, alternatively, "explain why [she] found no such additional restrictions necessary." (Pl.'s Br. at 18.) As set out above, the RFC in this case includes a limitation to "occasional interaction with the public," but does not contain any express limitations regarding interaction with coworkers or supervisors. (Tr. at 865.) Plaintiff, citing Dennis v. Berryhill, 362 F. Supp. 3d 303, 309 (W.D.N.C. 2019), argues that, "[w]hile the ALJ is not required to include a corresponding restriction to address interactions with each category of individuals— coworkers, supervisors, and the public—in her RFC determination, the burden is on the ALJ to make findings of fact and resolve evidentiary conflicts." (Pl.'s Br. at 18) (alteration in original). In Dennis, the court found that a limitation to "occasional interaction with the general public" was insufficient, given that

> [t]he ALJ specifically referenced evidence that Plaintiff needed an environment where he had guidance but would be allowed to work independently. However, these limitations are not accounted for in the RFC, and the ALJ's narrative discussion does not explain their omission. Without further explanation, the Court is "left to guess about how the ALJ arrived at her conclusion." Mascio, 780 F.3d at 637.

> Therefore, the Court agrees with Plaintiff that the decision must be remanded to specifically address the question of whether Plaintiff needs limitations in his interactions with supervisors and coworkers or provide an explanation for why that is not necessary, including citing to specific evidence in the record.

Dennis, 362 F. Supp. 3d at 310 (internal citation to record and brackets omitted).

Similarly, in Smith v. Berryhill, No. CBD-18-0381, 2018 WL 6249692, at *9 (D. Md. Nov. 29, 2018), the court found that remand was necessary where the RFC included no

limitations regarding supervisors, despite the ALJ's acknowledgment "that Plaintiff's 'PTSD symptoms were triggered by hostile interactions with a work supervisor, and symptoms improved after she left work and began taking her medications regularly.'" Id. The court clarified that, "[w]hile it is not necessary for an RFC to address interactions with supervisors, the ALJ's explanation fails to resolve the conflicting evidence concerning why this hostile interaction with a supervisor should not translate into limitations with how Plaintiff interacts with future supervisors." Id.

Plaintiff now contends that the circumstances of her own case involve conflicting evidence which also requires further explanation. In particular, the ALJ noted in her step three analysis that Plaintiff "does not trust men and does not like to be around men." (Tr. at 863; see also Tr. at 51-52.) Plaintiff argues that this testimony demonstrates that "she would likely have difficulty interacting appropriately with coworkers and supervisors, at least some of whom would be male." (Pl.'s Br. at 20.) However, Plaintiff points to no evidence supporting an inability to act appropriately with male supervisors or coworkers. She has no past history of problematic interactions in the workplace, as in Smith, nor is there any indication that she requires close supervision, as in Dennis. In her analysis, the ALJ noted that while Plaintiff testified that she "does not go to public places and cannot be around people," she also testified "that her mother and uncle visit every other week and she is able to go into a grocery store amongst other people to shop." (Tr. at 863). In addition, the ALJ expressly relied on the opinion of the consultative examiner, Dr. Quinn, who posited that Plaintiff's mental impairments would not "prevent the ability to relate to others including supervisors and peers in the work environment or in the community." (Tr. at 864, 869, 374). As noted by Dr. Quinn

15

in his Report, Plaintiff herself reported that she "has never had any difficulty conforming to social standards, complying with rules, or cooperating with authority figures." (Tr. at 368.) The state agency psychological consultants likewise opined that Plaintiff required no limitations in interacting with coworkers or supervisors. (Tr. at 869, 72-73, 87.) Rather, Dr. Miranda-DeCollibus posited that Plaintiff was "able to interact appropriately with others," while Dr. Williams opined that Plaintiff was "capable of moderately interacting [with] the [general] public" (Tr. at 73, 87), and the ALJ specifically included a limitation to only "occasional public contact" (Tr. at 869). Accordingly, the basis of the ALJ's analysis is sufficiently clear to allow for judicial review, and the Court finds that substantial evidence supports the social interaction limitations included in the RFC in this case.

Ultimately, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained her decision, and sufficiently explained the reasons for her determination. That determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand,

16

and Plaintiff's Motion to Reverse the Decision of the Commissioner should therefore be denied.

IT IS THEREFORE ORDERED that the Commissioner's decision finding of no disability is AFFIRMED, that Plaintiff's Dipositive Brief [Doc. #7] is DENIED, that Defendant's Dispositive Brief [Doc. #9] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 25th day of March, 2025.

/s/ Joi Elizabeth Peake
United States Magistrate Judge